NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT KELLY, | Civil Action No.: 17-0498 (CCC-SCM) |
| Plaintiff, | |
| v. | **OPINION** |
| CITY OF NEWARK, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court on the motion of E. Blount, Anthony Campos, the City of Newark, B. Logan, H. Lorenzo, Mario Martin, J. Rosa, D. Sapienza, Eugene Venable, R. Weber, and J. Whitaker (collectively, "Defendants") (ECF No. 10 ("Mot. to Dismiss")) for a more definite statement and to dismiss the Amended Complaint of Robert Kelly ("Plaintiff") (ECF No. 9 ("Compl.")). The Court has considered the submissions made in support of and in opposition to the instant motions. (ECF Nos. 11 ("Opp'n"), 12 ("Reply")). Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons set forth below, Defendants' motion is **GRANTED** in part and **DENIED** in part.

II. **BACKGROUND**

Plaintiff is domiciled in the State of New Jersey and resides in Essex County, where he was employed by the City of Newark, New Jersey's (the "City of Newark") Sanitation Department. (Compl. ¶¶ 1, 32). Defendants include the municipal corporation of the City of Newark, as well as numerous police officials employed by the City of Newark. (*Id.* ¶¶ 2-12).

The Newark Police Department obtained a valid warrant to search the premises located at 29 Osborne Terrace in the City of Newark on or about January 30, 2015. (*Id.* ¶ 25). The warrant was specifically to search the third floor of the building, which was in part rented by non-party Khalif Pinnix ("Pinnix"). (*Id.*). Plaintiff also resided on the building's third floor, where he rented a single room and had no connection with Pinnix. (*Id.* ¶ 27). On February 2, 2015, the individual Defendant police officers executed the knock and search warrant for Pinnix's residence. (*Id.* ¶ 28). The Defendant police officers found that Pinnix was in possession of both narcotics and guns, and arrested Pinnix. (*Id.* ¶¶ 29-30). The Defendant police officers also, however, arrested Plaintiff "based on the fact that he also rented a room on the third flood and that he possessed $640.00 which was alleged to have been drug proceeds."[1] (*Id.* ¶ 31). Plaintiff avers that he told the police officers he "had no involvement in [Pinnix's] drug dealing operation," and that "no drugs or drug paraphernalia were found in [his] room." (*Id.* ¶¶ 36-37). Essentially, Plaintiff claims he was merely a "fellow tenant" and that the police officers "had no indication that [P]laintiff . . . was involved with the drug dealing operation[.]" (*Id.* ¶¶ 38-39). Moreover, Plaintiff claims that he was "arrested due to his protestations of being arrested . . . rather than actually dealing drugs." (*Id.* ¶ 41).

Once Plaintiff was in custody, Plaintiff avers that "[w]ithout any basis in law or fact, defendant police officers drafted, signed under penalty of perjury, and filed . . . a criminal complaint falsely accusing [P]laintiff of several felony crimes." (*Id.* ¶ 42). As a result of these "false accusations," Plaintiff maintains he was "incarcerated for several months" and was forced to "retain an attorney and defend himself against criminal charges." (*Id.* ¶¶ 44-45). Plaintiff states

---

[1] Plaintiff avers that this money was legitimately earned through his employment at the City of Newark's Department of Sanitation (Compl. ¶ 31).

that the criminal charges were "ultimately dismissed." (*Id.* ¶ 46). Plaintiff also states that "the matter was referred to the Grand Jury on February 27, 2015," and that any indictment issued pursuant thereto "was obtained through false testimony regarding his involvement in the drug dealing." (*Id.*).

## III.  **LEGAL STANDARD**

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are

---

[2] The Court notes that Plaintiff's counsel cites to *Kellogg Co. v. Nat'l Biscuit Co.*, 38 F. Supp. 643, 648 (D.N.J. 1941), as well as makes numerous references to a "[n]otice [p]leading" standard throughout Plaintiff's Opposition. (*See* Opp'n at 3, 5, 9). While notice pleading was formerly the prevailing pleading standard under *Conley v. Gibson*, 355 U.S. 41 (1957), the modern pleading standard is governed by the *plausibility* requirement as elucidated below.

sufficient to show that the plaintiff has a 'plausible claim for relief.'" *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## IV.  DISCUSSION

Plaintiff brings a number of claims that are essentially derived from his purportedly unlawful arrest.[3]  First, Plaintiff brings a claim under 42 U.S.C. § 1986 for "neglect to prevent." Second, Plaintiff brings a number of claims under 42 U.S.C. § 1983, alleging constitutional deprivations in connection with his arrest.  Certain of these claims sound in tort, including:  (1) assault and battery; (2) infliction of emotional distress; (3) resulting injury to mind and body; (4) damage to his reputation; (5) psychiatric injury; and (6) economic damages.  (Compl. ¶¶ 56, 62, 83).  Plaintiff also makes a number of *Monell* claims against the municipality of Newark for:  (1) failure to train; (2) negligent hiring; (3) negligent supervision; and (4) inadequate structure for risk containment and stress management.  Finally, Plaintiff brings Section 1983 claims for false arrest and excessive use of force in connection with said arrest.  The Court will address each of these claims in turn.

### A.  Plaintiff's "Neglect to Prevent" Claim Under 42 U.S.C. § 1986 Is Time-Barred

Plaintiff alleges that Defendants violated 42 U.S.C. § 1986 by "in whole or in part neglect[ing] to prevent the wrongful actions against the Plaintiff." (Compl. ¶ 90).  Defendants correctly point out, however, that Section 1986 claims are subject to a one-year statute of limitations, and that Plaintiff's claim is time-barred. (Mot. to Dismiss at 5).  More specifically, Defendants argue that "726 days have passed between the date of Plaintiff's January 30, 2015

---

[3] Plaintiff's Amended Complaint includes six enumerated causes of action.  Defendants have, however, ascertained and responded to a higher number of perceived causes of action based on the Amended Complaint's substantive allegations.  Plaintiff's Opposition specifically references Defendants' identified causes of action.  Accordingly, the Court will address Plaintiff's claims as construed by both parties in their filings.

arrest and when Plaintiff asserted a Section 1986 claim in his January 25, 2017 Complaint." (*Id.* at 5-6). Indeed, Plaintiff concedes that this claim is in fact time-barred, and that Plaintiff's claim should be dismissed with prejudice. (Opp'n at 4). The Court therefore dismisses this claim with prejudice.

## B. Plaintiff's Tort-Based Claims Are Barred Under the New Jersey Tort Claims Act

Defendants maintain that Plaintiff's claims for assault and battery, infliction of emotional distress, injury to body and mind, reputational damage, psychiatric injury, and economic damage are essentially "common law torts." (Mot. to Dismiss at 6-7). Defendants therefore contend that these causes of action are subject to the notice requirements of the New Jersey Tort Claims Act, which both parties appear to agree Plaintiff has failed to comply with.[4] (*Id.*). Plaintiff, however, argues that these claims are all "by-products of the [Section 1983] civil rights violations which the Plaintiff has suffered and not a tort unto itself." (Opp'n at 4). Consequently, Plaintiff avers that these claims are not subject to the requirements of the New Jersey Tort Claims Act and may proceed regardless of Plaintiff's lack of compliance with the statutory notice requirements. (*See id.*).

---

[4] "The New Jersey Tort Claims Act requires a plaintiff to submit a notice of claim ninety days after the claim's accrual before he can sustain an action against a public entity or employee under the Act." *Clinton v. Jersey City Police Dep't*, No.07-5686, 2017 WL 1024274, at *6 (D.N.J. Mar. 16, 2017) (citing N.J. Stat. Ann § 59:8–3). "The Act further provides that if the plaintiff fails to submit a timely notice of the claim, he may, 'in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby.'" *Id.* (quoting N.J. Stat. Ann. § 59:8–9). As Plaintiff was arrested on January 30, 2015, he had ninety days from that date in which to submit a notice of claim. Defendants contend that Plaintiff failed to file a notice of claim, (Mot. to Dismiss at 7), and Plaintiff does not deny this contention. (Opp'n at 4). Plaintiff's claims are also well beyond the one-year discretionary extension period. Accordingly, the Court finds that these claims are definitively time barred under the New Jersey Tort Claims Act. *See Clinton*, 2017 WL 1024274, at *6 ("As more than one year has passed since the accrual of Plaintiff's claims, Plaintiff cannot file a notice of claim as required by the New Jersey Tort Claims Act.").

"In order to establish a claim under Section 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of his rights, privileges, or immunities secured *by the Constitution or laws of the United States.*" *E.K. v. Massaro*, No. 12-2464, 2013 WL 5539357, at *3 (D.N.J. Oct. 7, 2013) (emphasis added) (citing *Powell v. Ridge*, 189 F.3d 387, 400 (3d Cir.1999)). "[Section] 1983 does not encompass state law tort claims," which must conform to the procedural mandates of the New Jersey Tort Claims Act. *See Abdur-Raheem v. New Jersey Dep't of Corr.*, No. 15-1743, 2017 WL 1050581, at *9 (D.N.J. Mar. 20, 2017); *see also Johnson v. Atty. Gen. of U.S.*, 187 F. App'x 154, 156 (3d Cir. 2006) ("[T]he Fourteenth Amendment was not designed to supplant traditional tort law and, thus, does not encompass protection from negligent governmental acts."). Courts within this Circuit have found that causes of action including intentional infliction of emotional distress, assault and battery, negligent infliction of emotional distress, and negligence are essentially "exclusively supplemental state law tort claims" that do not "encompass § 1983 violations[.]" *Moore v. Vangelo*, No. 03-4718, 2004 WL 292482, at *3 (E.D. Pa. Feb. 12, 2004).

The Court finds that Plaintiff's causes of action for assault and battery, infliction of emotional distress, injury to body and mind, reputational damage, psychiatric injury, and economic damage are essentially state law tort claims, which fall outside the scope of Section 1983 and must therefore comply with the notice provisions of the New Jersey Tort Claims Act. *See Abdur-Raheem*, 2017 WL 1050581, at *9 (rejecting plaintiff's argument that failure to file a notice of claim did not bar Section 1983 claims based on state tort law, and dismissing for failure to state a claim upon which relief may be granted); *see also Batiz v. Brown*, No. 12-581, 2013 WL 1137531, at *3 (D.N.J. Mar. 14, 2013) ("By now it is abundantly clear that common law torts committed by local governments or government employees do not, on that basis alone, constitute Fourteenth

Amendment violations actionable under § 1983."). While Plaintiff avers that these causes of actions are essentially "by-products" of constitutional claims and that the law is "very clear in this matter," Plaintiff cites to no precedent for the proposition. (*See* Opp'n at 4). As Plaintiff's claims sound in tort, and Plaintiff has indisputably failed to comply with the notice requirements of the New Jersey Tort Claims Act, the Court must dismiss Plaintiff's claims without prejudice.

### C. Plaintiff States Proper *Monell* Claims

Plaintiff additionally brings claims under Section 1983 against the City of Newark for: (1) failure to train; (2) negligent hiring; (3) negligent supervision; and (4) inadequate structure for risk containment and stress management.

"A municipal government may not be sued under Section 1983 for an injury inflicted solely by its employee." *Colombo v. The Bd. of Educ. for the Clifton Sch. Dist.*, No. 11-785, 2016 WL 6471013, at *3 (D.N.J. Oct. 31, 2016). Municipalities may, however, incur liability vis-à-vis their employees or agents "where the where the alleged unconstitutional actions are connected to official policy." *Black v. Twp. of S. Orange*, No. 11-00709, 2014 WL 4755506, at *3 (D.N.J. Sept. 23, 2014). The Third Circuit has clarified that:

> [a] government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

*Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir.1990) (citations omitted). At a minimum, a party bringing such a Section 1983 claim "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). In addition, plaintiffs must prove a causal link between an official policy, practice, or custom and the constitutional violation. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 910

(3d Cir. 1984); *see also Bielevicz v. Dubinion*, 915 F.2d 845, 850 (3d Cir. 1990) ("This burden of proof also requires Plaintiffs to show proximate cause between the municipal practice, policy, or custom and the specific constitutional right being violated."). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz*, 915 F.2d at 850 (citations omitted).

### 1. Plaintiff States a Claim for Failure to Train

Pursuant to the Supreme Court's holding in *City of Canton v. Harris*, 489 U.S. 378 (1989), "[u]nder certain circumstances, a municipality's failure to properly train its employees and officers can amount to a 'custom' that will trigger liability under § 1983." *Gardner v. New Jersey State Police*, No. 15-8982, 2017 WL 2955348, at *3 (D.N.J. July 11, 2017) (citing *Canton*, 489 U.S. at 388). More specifically, "[w]here the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to "deliberate indifference" to the rights of persons with whom those employees will come into contact.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). In sum, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410.

Plaintiff avers that "[a]t all relevant times, the municipal defendant staffed its police department with officers who were . . . inadequately trained," and that the municipal defendant

8

"knew, or should have known," of this inadequate training. (Compl. ¶¶ 18, 21). Moreover, Plaintiff contends that this failure to provide adequate training "amounts to a deliberate indifference to the safety and lives of the citizens of the City of Newark . . . [which] was a proximate cause of the injuries to Plaintiff," as well as "deliberate indifference to the rights of Plaintiff to be free from excessive force and unreasonable seizures under the Fourth, Fifth, and Fourteenth Amendments[.]" (*Id.* ¶¶ 53, 60).

Defendants contend that Plaintiff "fails to specify *any* City of Newark policies, customs, and practices, that the individual defendant-Newark Police officers acted pursuant to in depriving Plaintiff of his constitutional rights under 42 U.S.C. § 1983." (Mot. to Dismiss at 8). Defendants assert that this lack of specificity dooms Plaintiff's claim for deliberate indifference in regards to the City of Newark's training policies. (*Id.* at 8-9). At this stage of the proceedings, however, the Court finds that Plaintiff has done as much as can be expected. Plaintiff's Amended Complaint cites to a publically available Department of Justice ("DOJ") investigative report, dated July 22, 2014, in which the DOJ "found widespread Fourth Amendment violations and retaliations against Newarkers for objecting to police actions and for First Amendment [v]iolations." (Compl. ¶ 76). More specifically, Plaintiff contends that the report concluded, *inter alia*, that the City of Newark "fail[ed] to have a complete set of modern and meaningful policies or practices that guide officers[.]" (*Id.*). Plaintiff also alleges that this lack of proper training was the causal link to Plaintiff's constitutional deprivations. Consequently, the Court denies Defendants' motion to dismiss on this claim. *See Fallen v. City of Newark*, No. 15-2286, 2017 WL 368500, at *8 (D.N.J. Jan. 24, 2017) (denying motion to dismiss *Monell* claim where Plaintiff cited to the same DOJ report, which related to claims of "inadequate misconduct investigations, inadequate supervision, and inadequate training").

9

## 2. Plaintiff States a Claim for Negligent Hiring

In regards to a claim of inadequate screening or negligent hiring, the Supreme Court has held that, under *Canton*,

> [o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Brown*, 520 U.S. at 411. In other words, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412. This standard reflects the problematic nature of the inquiry, namely that "predicting the consequence of a single hiring decision . . . is far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties." *Id.* at 410. Indeed, the Supreme Court has observed that, because "[e]very injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense . . . court[s] must carefully test the link between the policymaker's inadequate decision and the particular injury alleged," in order "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability." *Id.*

Plaintiff alleges that "the City of Newark and the City of Newark Police Department have failed to effectively . . . hire . . . their police officers including the individually named defendant police officers." (Compl. ¶¶ 66, 69). Plaintiff further alleges that this failure, in part, put the individual defendant police officers "in a position to unjustifiably arrest and restrain the Plaintiff and to otherwise cause him injury and violate his federal and state constitutional rights." (*Id.* ¶ 66). Indeed, Plaintiff maintains that defendants "were deliberately indifferent in hiring . . . the

10

individually named defendant police officers, in that said employees lacked the experience, deportment, and ability to be employed" in such positions, and that "defendants failed to exercise due care and caution in its employment practices," including in hiring. (*Id.* ¶ 82).

The Court concludes that, at this stage of the proceedings, Plaintiff has pled a claim for negligent hiring under Section 1983. *See Harvey v. Cty. of Hudson*, No. 14-3670, 2015 WL 9687862, at *10 (D.N.J. Nov. 25, 2015) (denying motion to dismiss as to negligent hiring claim, even absent extremely specific factual allegations, where "common sense suggests that the relevant facts are largely within control of the" defendant police department); *cf. Adams v. City of Camden*, 461 F. Supp. 2d 263, 269 (D.N.J. 2006) (concluding at the *summary judgement stage* that Plaintiff failed to state a claim for negligent hiring as a *matter of law*) (emphasis added)). Accordingly, the Court denies Defendants' motion to dismiss as to Plaintiff's *Monell* claim for negligent hiring.

### 3. Plaintiff States a Claim for Negligent Supervision

The Third Circuit has clarified that "the deliberate indifference standard applies to . . . allegations of negligent supervision and failure to investigate." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (citation omitted); *see also Merman v. City of Camden*, 824 F. Supp. 2d 581, 589 (D.N.J. 2010).

Plaintiff maintains that Defendants "failed to provide . . . supervision of their police officer[]s, and this failure amounts to a deliberate indifference to the safety and lives of the citizens of the City of Newark," which "deliberate indifference to supervision . . . was a proximate cause of the injuries to Plaintiff." (Compl. ¶ 53). Plaintiff further cites to the DOJ report, which includes a finding that the Newark Police Department had "an ineffective process of identifying and deterring . . . conduct" that included "[f]alse arrests . . . made without reasonable suspicion of criminal activity . . . along with improper searches, malicious prosecutions, the false planting of

11

evidence and other corrupt practices." (Compl. ¶ 76). As with Plaintiff's claims for inadequate training and negligent hiring, the Court finds that Plaintiff sufficiently states a claim for negligent supervision at this stage of the proceedings so as to warrant denial of Defendants' motion to dismiss as to this claim. *See Fallon*, 2017 WL 368500, at *8.

### 4. Plaintiff States a Claim for Inadequate Structure for Risk Containment and Stress Management

Plaintiff additionally contends that the City of Newark and its Police Department "maintained an inadequate structure for risk containment and stress management relative to its police officers and failed to create proper means of containing such risk and managing such stress." (Compl. ¶ 67). More specifically, Plaintiff avers that this structural deficiency existed from the time of hiring onwards, and was deficient "in its ability to evaluate and exchange information within the command structure about the performance of individual police officers, in its training of supervisory personnel . . . and in its ability to otherwise put the command structure on notice that an individual was at significant levels of risk to the public at large and to the Plaintiff specifically." (*Id.*). The Court concludes that Plaintiff has stated a plausible claim in this regard by identifying a specific allegedly inadequate policy that is causally related to Plaintiff's asserted constitutional deprivations. Accordingly, the Court denies Defendants' motion to dismiss this claim.

### D. Plaintiff States A Claim for False Arrest

"The proper inquiry in a [S]ection 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). "The elements of a false-arrest claim are (a) that an arrest occurred; and

12

(b) that the arrest was made without probable cause." *Brown v. Makofka*, 644 F. App'x 139, 143 (3d Cir. 2016) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995); *see also Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) ("In analyzing whether probable cause existed for an arrest, we must take a 'totality-of-the-circumstances approach.'" (citations omitted)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Plaintiff alleges that "[w]ithout any basis in law or fact, the defendant police officers took the plaintiff into custody and charged him with several felony crimes." (Compl. ¶ 42). Defendant observes that Plaintiff's Amended Complaint fails to explicitly specify the crime or crimes for which Plaintiff was arrested. (Mot. to Dismiss 11-12). Plaintiff's Amended Complaint, however, clearly alleges that Plaintiff "was arrested due to his protestations of being arrested . . . rather than actually dealing drugs." (Compl. ¶ 41). Moreover, the gravamen of Plaintiff's Amended Complaint is that Plaintiff was falsely arrested as a participant in Pinnix's narcotics operation, when in reality Plaintiff was merely a "fellow tenant," in possession of cash, which defendants erroneously presumed to be proceeds of the narcotics operation.[5] (*See id.* ¶¶ 31-39). Plaintiff

---

[5] Indeed, Plaintiff's Opposition identifies that Plaintiff was charged with: "Conspiracy (2C:5-2); Possession CDS with Intent to Distribute (2C:35-5); Possession of a Weapon while Committing a CDS Crime (2C:35-10A); Possession of CDS (2C:35-5A(1)); Dist. [W]ithin a School Zone (2C:35-7); Distribution CDS w/in 500 ft. of Public Housing (2C:25-7.1A)." (Opp'n at 8). Defendant argues that Plaintiff's attachment of the Judgement of Dismissal and Arrest Report as

avers that both Pinnix and Plaintiff himself disclaimed involvement in the narcotics operation, and that "no drugs or drug paraphernalia [were] found in" Plaintiff's room. (*Id.* ¶¶ 35-37). Indeed, Plaintiff explicitly states that "defendant police officers had no indication that [Plaintiff] . . . was involved with [Pinnix's] drug dealing operation[.]" (*Id.* ¶ 38). At this stage of the proceedings, the Court concludes Plaintiff has brought a plausible claim for false arrest. Defendants' motion to dismiss Plaintiff's claim for false arrest is denied.

### E. Plaintiff Fails to State a Claim for Excessive Use of Force

"A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution." *Groman*, 47 F.3d at 633-34. "When a police officer uses force to effectuate an arrest that force must be reasonable." *Id.* at 634. Determining whether the force utilized is reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989). "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of

---

exhibits to Plaintiff's Opposition is an inappropriate attempt to amend Plaintiff's filing. (Reply at 6). On a motion to dismiss, however, the Court may consider undisputedly authentic documents upon which the plaintiff's complaint is based. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A document falls into this category even where the complaint does not cite or "explicitly rel[y]" on it; "[r]ather, the essential requirement is that the plaintiff's claim be 'based on that document.'" *Brusco v. Harleysville Ins. Co.*, No. 14-914, 2014 WL 2916716, at *5 (D.N.J. June 26, 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff's Amended Complaint is squarely derived from Plaintiff's allegedly unlawful arrest and the criminal complaint filed against him in relation to the arrest. As such, this Court will consider Plaintiff's Judgment of Dismissal and Arrest Report.

14

the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)).

Defendant maintains that Plaintiff's claim must be dismissed because it "is supported by no factual allegations, or even conclusory assertion[s]." (Mot. to Dismiss at 10). The Court is similarly unable to identify concrete allegations or assertions regarding excessive use of force, beyond the mere contention that certain defendants acted with "excessive force" at some unspecified time. (Compl. ¶ 54). The Court must therefore dismiss this particular claim. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions . . . will not do.'" (citation omitted)). However, because it is conceivable that a Defendant may have utilized excessive force in connection with Plaintiff's arrest, the Court dismisses this claim without prejudice.

### F. Defendants' Motion for a More Definite Statement

Pursuant to Federal Rule of Civil Procedure 12(e), "[i]f the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response,' the Court may direct Plaintiff to provide a more definite statement." *Greengrass v. Provident Bank*, No. 16-4105, 2017 WL 3671303, at *1 (D.N.J. Aug. 25, 2017). To the extent Plaintiff seeks to to file a revised pleading in accordance with this Opinion, the Plaintiff must detail each and every additional constitutional or statutory violation in a clear fashion.

### V.   CONCLUSION

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's Section 1986 claim with prejudice. The Court further grants Defendants' motion to dismiss Plaintiff's tort-based claims, as well as Plaintiff's claim for excessive use of force, but without prejudice. The Court denies Defendants' motion to dismiss as to Plaintiff's *Monell* claims and to Plaintiff's claim for false arrest. Finally, the Court grants Defendants' motion for a more definite statement to the

extent that Plaintiff seeks to bring additional constitutional or statutory claims. An appropriate Order accompanies this Opinion.

**Date:** March 16, 2018

**CLAIRE C. CECCHI, U.S.D.J.**